LxpsCOHb, J.
This was an appeal from the district court of the county of Austin. Proceedings were instituted by the plaintiff, who *(420) is an administrator of an estate in that county and who obtained judg-' ment on a note given at a succession sale, dated 5th January, 1841. The judgment was obtained at the spring term of the court, 1848. The object of the proceedings was to compel the clerk of the court to issue an execution on the judgment, with his indorsement, “ sale for cash without appraisement.” Both parties seem to have sought the judgment of the court for instruction. The clerk refused to make the indorsement requested by the plaintiff in execution. A petition was filed praying that the clerk be compelled to make the indorsement, as he had been required to do by the plaintiff. The clerk answered by exception in law, and the exception was pro forma sustained, and judgment against the plaintiff, from which an appeal has been taken to this court.
It has been contended by the plaintiff’s counsel that by the true construction of the act of the 6th Congress, “ To reduce into one and amend the several acts concerning executions,” it does not embrace executions on judgments founded on a purchase made at succession sales. We are referred to the 56th section of the act regulating the duties of probate courts and the settlement of successions, 4th Congress, 129, which provides, “That in all cases where property is sold at a sale of a succession of any deceased person, or of the property of minors, idiots, lunatics and persons non compos mentis, the property of the purchaser or his securities may be seized and sold on execution for cash, to the highest bidder, without appraisement.” This act, it is contended, was not repealed by the 17th and 19th sections of the act first mentioned. These two sections regulate the mode of making the appraisement and the proceedings after such appraisement and offer to sell; and although the language is pretty explicit in its application to executions, it seems the legislature, lest there might be some misconception as to the full scope to be embraced, proceed in the 20th section of the same act to provide, “ That the provisions of this act shall apply to all sales under execution, whether by sheriffs, coroners or constables, except sales for public dues which shall be positive, without appraisement.” It would seem that every kind of an execution for the sale of property is included, with the. solitary exception of sales for public dues. The title of the act would show that the intention was to embrace all, and that all executions are subject to the provisions of that act, when the judgment was obtained on a contract, prior to the time fixed upon by the 21st section thereof, except for public dues, so far it was competent for the congress to do so. We are not disposed to enter elaborately into the discussion of the power of congress to pass such laws. It was once thought that the *(421) question was settled in tbe supreme court of the United States, on principles easily understood, acknowledging and defining the distinction between rights and remedies — that a law that effected a change or a nullity of the first was prohibited by the constitution, as impairing the obligation of contracts, whilst such as only related to the remedy were not prohibited. Process laws were believed to belong to the latter, and were at the will of the legislature to alter or modify, and to give additional remedies. On such principles, it was believed that the process of execution could be modified without being obnoxious to the prohibiting clause.
Laws of limitation were thought, on the same distinction, to be appropriated to the forum where the suit was brought; that as such laws did not assume to abolish the debts, but only refused a remedy, their constitutionality was not questioned. This is still the acknowledged doctrine of the supreme court of the United States; but on what principle that court can reconcile the doctrine on that subject, with their recent decisions on the appraisement laws, is difficult to be understood. In the first, it is allowed to the legislative power to say that after the expiration of any arbitrary period of time that may be adopted, we will refuse to give you any remedy in our courts on your contracts. In the latter, the legislature say, we will allow the benefits of process to enforce your rights, only on the conditions imposed. In the first all remedy is withheld; in the latter a remedy is allowed, coupled with conditions.
It does not appear that the question is settled in that tribunal. There seems to be some division among the judges. Whenever and however it may be settled, we must yield a respectful submission, on all questions that may be within its jurisdiction. But on questions over which that tribunal has no control we shall be left to conclude according to our own opinion of the law and the constitution. Let the decision be as it may, our state may, perhaps, be entitled to claim an exception. The law of valuation or appraisement, on property subjected to forced sales, is familiar to the Spanish civilian, and it belonged to the jurisprudence of Mexico. It was under its benign influence that Texas was colonized as a part of Mexico.
It well suited the genius of our people, whose occupation and habits led them into but few commercial engagements, and whose contracts were made, more with a view to an exchange of property than to money. Their contracts, too, were in reference to the laws that had been long familiar to them, and appraisement might, with at least much plausibility and force, be said to be a law of the contract. This system was kept up, with various modifications, after the revolution *(422) with a short exception, during the whole existence of the republic. When the greater part of the inhabitants are engaged in commerce, and most of their contracts of that character, appraisement laws would not suit such a community; but when there are not many persons so engaged, and the greater mass are cultivators of the soil, the inconvenience would not be felt, and the system of exchange or barter has been found very convenient. On the whole, we are not satisfied that our appraisement law is in violation of our constitution, and we must, therefore, affirm the judgment of the court below.